AO 91 (Rev. 11/82) **CRIMINAL COMPLAINT**

| UNITED STATES DISTRICT COURT | CENTRAL DISTRICT OF CALIFORNIA |
|---|---|
| UNITED STATES OF AMERICA<br>v.<br>**MICHAEL ARRON SHORES and**<br>**KEVIN MARIO NIEBRES** | DOCKET NO.<br><br>MAGISTRATE'S CASE NO.<br>SA19-530M |

Complaint for a violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(B)(viii)

| NAME OF MAGISTRATE JUDGE<br>HONORABLE KAREN E. SCOTT | UNITED STATES MAGISTRATE JUDGE | LOCATION<br>Santa Ana, California |
|---|---|---|
| DATE OF OFFENSE<br>May 28, 2019 | PLACE OF OFFENSE<br>Orange County | ADDRESS OF ACCUSED (IF KNOWN) |

COMPLAINANT'S STATEMENT OF FACTS CONSTITUTING THE OFFENSE OR VIOLATION:

On or about May 28, 2019, in Orange County, within the Central District of California, defendants MICHAEL ARRON SHORES and KEVIN MARIO NIEBRES, knowingly possessed methamphetamine with intent to distribute in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(B)(viii), Possession with Intent to Distribute Methamphetamine.

BASIS OF COMPLAINANT'S CHARGE AGAINST THE ACCUSED:

(See attached affidavit which is incorporated as part of this Complaint)

MATERIAL WITNESSES IN RELATION TO THIS CHARGE: N/A

| Being duly sworn, I declare that the foregoing is true and correct to the best of my knowledge. | SIGNATURE OF COMPLAINANT<br>/S/<br>**FARSHID HASHEMPOUR** |
|---|---|
| | OFFICIAL TITLE<br>Task Force Officer<br>Federal Bureau of Investigation |

Sworn to before me and subscribed in my presence,

| SIGNATURE OF MAGISTRATE JUDGE(1)<br>KAREN E. SCOTT | DATE<br>7/3/19 |
|---|---|

(1) See Federal Rules of Criminal Procedure 3 and 54

AUSA Kong:sks       REC: Detention

# **A F F I D A V I T**

I, Farshid Hashempour, being duly sworn, hereby declare and state as follows:

## I. INTRODUCTION

1. I am a Detective with the Santa Ana Police Department ("SAPD") and also a federally deputized Task Force Officer ("TFO") presently working with the Federal Bureau of Investigation ("FBI"). As a TFO with the FBI, I am an investigative or law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7), and I am empowered by law to conduct investigations and make arrests for offenses enumerated in 18 U.S.C. § 2516.

2. I am assigned to the Orange County Violent Gang Task Force ("OCVGTF"). The OCVGTF is composed of federal and local law enforcement agencies, including, but not limited to, the FBI, the Internal Revenue Service-Criminal Investigations, the Bureau of Alcohol, Tobacco, Firearms, and Explosives, the SAPD, and detectives from the Anaheim Police Department. The OCVGTF is responsible for, among other things, investigating violations of federal law committed by criminal street gangs, the Mexican Mafia, and other violent criminal organizations in Orange County. Prior to this assignment with the FBI, I was a SAPD Police Officer and have been so employed for approximately eighteen years.

3. I have specialized training and experience in investigations of narcotics trafficking and criminal street gangs. During my tenure as a Police Officer, as well as an FBI

TFO, I have conducted and participated in numerous investigations of criminal activity, specifically including narcotics trafficking and violent offenses committed by street gangs. Since joining the OCVGTF in 2010, I have specialized in investigations of the Mexican Mafia and its subordinate gangs in Orange County. As part of these investigations, I have also learned about the drug trafficking organizations that supply street gangs with illegal narcotics.

## II. PURPOSE OF AFFIDAVIT

4.  This affidavit is made in support of a criminal complaint and arrest warrants against MICHAEL ARRON SHORES ("SHORES") and KEVIN MARIO NIEBRES ("NIEBRES") for a violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(viii): Possession with Intent to Distribute Methamphetamine.

5.  The facts set forth in this affidavit are based upon information obtained from other law enforcement personnel, my personal knowledge, and my training and experience. This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and warrant, and does not purport to set forth all of my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

## III. SUMMARY OF PROBABLE CAUSE

6.  On or about May 22, 2019, a Costa Mesa Police Department ("CMPD") Detective, while in a plain clothes

2

capacity, was parked in the lot of the Department of Motor Vehicles ("DMV") in the city of Stanton, California. While in the lot, the CMPD Detective engaged in a conversation with KEVIN NIEBRES. During their discussion, the Detective shared with NIEBRES that he was buying Oxycodone pills to help with pain that he had from a previous car accident. NIEBRES told the Detective that he sold heroin, prescription pills and methamphetamine. NIEBRES also stated that he had a friend who sold assault rifles. The Detective told NIEBRES he was interested in purchasing firearms and large amounts of methamphetamine. The Detective and NIEBRES exchanged numbers with the intent of contacting each other in the future.

7. On May 23, 2019, the CMPD Detective who met NIEBRES the previous day, contacted NIEBRES and asked for a half pound of methamphetamine. Later that same day, at about 6:00 p.m., NIEBRES met with the Detective and told him that he only had a half of an ounce of heroin and not the half pound of methamphetamine he requested. NIEBRES later left and told the Detective that he would call him back when he could get the half pound of methamphetamine.

8. On May 28, 2019, NIEBRES and the CMPD Detective exchanged several phone calls discussing the purchase of the half pound of methamphetamine. NIEBRES and the Detective eventually agreed to meet at the South Coast Plaza, located at 3333 South Bristol Street, Costa Mesa, California. CMPD Detectives set up around the meet location as the Detective who had been corresponding with NIEBRES arrived and parked. A

Detective on surveillance observed a Silver Hyundai sedan enter the parking lot. The Detective recognized the back seat passenger of the Hyundai as NIEBRES. When the Hyundai parked next to the Detective's vehicle, NIEBRES exited the vehicle and got into the right front passenger seat of the Detective's vehicle. NIEBRES then looked at the driver of the Hyundai, later identified as MICHAEL SHORES, who handed NIEBRES a black sweater. Inside the black sweater was a Ziploc bag containing an off-white crystalline substance resembling methamphetamine. After NIEBRES handed the Detective the Ziploc bag, CMPD approached the vehicles and detained all parties.

9. All occupants of the vehicle were arrested and transported to the Costa Mesa Police Jail, where they were interviewed under Miranda. SHORES said he arrived to give NIEBRES a ride, but did not know he had methamphetamine. During his interview, NIEBRES admitted to being a "middle man" for the deal with the CMPD Detective. NIEBRES was initially reluctant to implicate SHORES, but stated that he did not have any narcotics prior to being picked up by SHORES.

10. SHORES, NEIBRES and the other occupant in the vehicle, identified as Sean Hall, were arrested for possession of a controlled substances for sales and transportation.

## IV. STATEMENT OF PROBABLE CAUSE

11. I have reviewed the police report prepared by CMPD Detective J. Santibanez covering the operations that led to the May 28, 2019, arrest of SHORES and NIEBRES. Based on my review

4

of the reports and my conversation with Detective Santibanez, I have learned the following facts:

  a. On or about May 22, 2019, Costa Mesa Police Department Detective Santibanez was working in a plain clothes capacity and driving an unmarked vehicle. At approximately 6:50 a.m., Detective Santibanez was parked in the lot for the Department of Motor Vehicles (DMV), located at 12645 Beach Boulevard, Stanton, California, when an individual, later identified as KEVIN NIEBRES, parked his vehicle next to Detective Santibanez's vehicle. While Detective Santibanez and NIEBRES made small talk, Detective Santibanez noticed that NIEBRES exhibited objective symptomology consistent with an individual who is under the influence of a stimulant. During the course of their conversation, Detective Santibanez told NIEBRES that he was recently involved in a traffic accident, which resulted in an injury to his back. Detective Santibanez informed NIEBRES that he was buying Oxycodone pills to help cope with his back pain. NIEBRES responded that he was able to sell Detective Santibanez prescription pills, methamphetamine and heroin. NIEBRES further stated he had a friend who possessed twenty (20) assault rifles that were for sale.

  b. On May 23, 2019, Detective Santibanez asked NIEBRES to sell him a "half p," or half pound, of methamphetamine. Detective Santibanez told NIEBRES that he usually pays between $900-$1200 for a half pound of methamphetamine. NIEBRES agreed to supply Detective Santibanez with a half pound of methamphetamine and would meet him in the

parking lot of the South Coast Plaza mall, located at 3333 South Bristol Street, Costa Mesa, California. Later the same day, at about 6:00 p.m., NIEBRES met with Detective Santibanez in the parking lot of the South Coast Plaza and told Detective Santibanez that he had "half a piece," or half an ounce, of heroin. NIEBRES did not have the half pound of methamphetamine and called an unknown person in Detective Santibanez presence, and told that person not to bring the heroin because he had made a mistake. NIEBRES then asked Detective Santibanez for a ride to the area of McFadden Avenue and Fairview Road, in the city of Santa Ana, California, which is where NIEBRES stated his supplier lives. Detective Santibanez said he could not give him a ride. NIEBRES left Detective Santibanez's vehicle and told him that he would call Detective Santibanez when he was able to get the half pound of methamphetamine.

      c. On May 24, 2019, NIEBRES sent Detective Santibanez a text message asking if he still wanted the half pound of methamphetamine. Detective Santibanez informed NIEBRES that he was out of town but would be back on May 28, 2019. On May 28, 2019, Detective Santibanez sent NIEBRES a text message asking him if he could still get the half pound of methamphetamine. NIEBRES told Detective Santibanez that he could get the methamphetamine and that it would cost him $950. After exchanging a series of phone calls, NIEBRES agreed to meet with Detective Santibanez at the South Coast Plaza mall. At approximately 12:55 p.m., NIEBRES sent Detective Santibanez a text message saying, "Ey were on our way."

        d.    Members of the Costa Mesa Police Department's Special Investigation Unit ("SIU") set up surveillance on the parking lot where NIEBRES was supposed to meet Detective Santibanez.  While on surveillance, Detective J. Saar observed a silver colored Hyundai Sonata, bearing California license plate 7FJG154, drive into the lot.  Detective Saar recognized the rear passenger in the Hyundai Sonata as NIEBRES.  Detective Saar's identification of NIEBRES was based on surveillance pictures of NIEBRES he had reviewed from his previous meeting with Detective Santibanez on May 23, 2019.

        e.    The Hyundai Sonata then drove towards the location of Detective Santibanez's vehicle and parked next to Detective Santibanez's passenger door.  NIEBRES exited the Hyundai and got into the right front passenger seat of Detective Santibanez's vehicle.  NIEBRES then looked over at the right front passenger of the Hyundai, later identified as MICHAEL ARRON SHORES.  SHORES was observed nodding his head in an up and down manner before reaching down between his legs and producing a balled up black sweater, which he handed to NIEBRES through the open driver's door.  NIEBRES handed the black sweater to Detective Santibanez, who asked NIEBRES if he could look at the contents.  After receiving NIEBRES's approval, Detective Santibanez removed a Ziploc bag containing an off-white crystalline substance resembling methamphetamine.  CMPD Detectives converged on the vehicles and placed NIEBRES, SHORES and the driver of the Hyundai, identified as Sean Lucien Hall, under arrest.  It should be noted that the Hyundai Sonata was

7

found to be registered to Sean Hall at 809 South Aztec Circle, Santa Ana, California.

   f. NIEBRES, SHORES and Hall were all arrested by CMPD for possession of a controlled substance for sales and transportation, in violation of Health and Safety Code §§ 11378, 11379, and Conspiracy to Commit Crime, in violation of California Penal Code § 182(a)(1), and transported to the CMPD Jail.  During a search of NIEBRES subsequent to arrest, CMPD Detective Chawla found a small plastic bindle containing an off-white crystalline substance resembling methamphetamine in NIEBRES's front right coin pocket.  The purported methamphetamine seized after the arrests of NIEBRES, SHORES and Hall was transported to the CMPD, where it was found to weigh 232.83 grams.  The plastic bindle containing purported methamphetamine, which was found in NIEBRES's coin pocket, was found to weigh 5.56 grams.

   g. A records check of SHORES revealed that the address to his residence was listed as 725 South Shawnee Drive, Santa Ana, California.  On May 28, 2019, at about 6:45 p.m., Detective Santibanez obtained a search warrant for SHORES's residence on South Shawnee Drive, which was signed by the Honorable Judge S. George of the Harbor Justice Center.  Approximately one hour later, CMPD SIU and Gang Detectives served the search warrant at 725 South Shawnee Drive.  Upon entering the home, Detective Santibanez spoke with SHORES's sister, Leigh, who directed the Detectives to SHORES's room, located on the northeast portion of the house.  A search of

SHORES's room revealed a working digital scale and a used glass pipe with residue, which is commonly believed to be a device used to ingest methamphetamine and cocaine.

  h. At CMPD, Detective Hermes read SHORES his rights per Miranda verbatim from his CMPD issued Miranda Card. SHORES said that NIEBRES and Hall are his friends. SHORES stated that he and Hall agreed to give NIEBRES a ride to the parking lot where they were arrested. SHORES stated that he knew NIEBRES was meeting with someone, but did not know the purpose of their meeting. SHORES also said that he did not know NIEBRES had the methamphetamine with him or that he intended on selling it. SHORES then advised that he no longer wanted to speak with Detective Hermes.

  i. Detective Hermes then read Hall his rights per Miranda verbatim from his CMPD issued Miranda Card. Hall told Detective Hermes that NIEBRES asked him for a ride because he planned on selling something to someone he was corresponding with on an application called, "Let Go." Hall was not aware of what NIEBRES was selling, but suspected it was possibly narcotics. Hall admitted to picking up NIEBRES, but did not ask any questions regarding the nature of his intended sale.

  j. Detective Hermes then read NIEBRES his Miranda Rights using his CMPD issued Miranda Card. NIEBRES admitted to being a "middle man" to supply Detective Santibanez with a half pound of methamphetamine. NIEBRES was initially hesitant to implicate SHORES as the supplier of the methamphetamine. When Detective Hermes asked NIEBRES about SHORES's and Hall's

9

involvement with the delivery of the methamphetamine to Detective Santibanez, NIEBRES answered, "Well, they came to pick me up, so." NIEBRES said he did not have the half pound of methamphetamine prior to being picked up by SHORES and Hall. Detective Hermes then asked NIEBRES if SHORES had supplied him with the methamphetamine to deliver to Detective Santibanez because of time constraints. NIEBRES initially said, "no," before pausing for several moments and responding, "Yeah, I guess."

    k.   Due to the Costa Mesa Police Department's policy prohibiting the presumptive testing of narcotics, the narcotics seized during this undercover operation and on NIEBRES's person was not field tested. The methamphetamine package was later obtained from Detective Santibanez and sent to the DEA Southwest Lab for quantitative and qualitative testing. Upon completion of the tests, the exhibit will be placed into evidence at the FBI's Los Angeles Field Office. Based on my training and experience, which includes observing methamphetamine, I submit that there is probable cause to believe that the narcotics taken during the undercover operation and subsequent arrest are in fact methamphetamine.

    //
    //
    //

## V. CONCLUSION

12. For all the reasons described above, there is probable cause to believe that SHORES and NIEBRES have committed a violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(viii): Possession with Intent to Distribute Methamphetamine.

/S/
FARSHID HASHEMPOUR
Task Force Officer, FBI
Detective, SAPD

Subscribed to and sworn before me this 3rd day of July 2019.

KAREN E. SCOTT
UNITED STATES MAGISTRATE JUDGE

11